IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT LABORATORIES and ABBOTT CARDIOVASCULAR SYSTEMS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-259-SLR |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| JOHNSON and JOHNSON, INC. and CORDIS CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

## ANSWER AND COUNTERCLAIMS

Johnson & Johnson, Inc. ("J&J") and Cordis Corporation ("Cordis Corp.")

(collectively, "Cordis"), by their attorneys, for their Answer to the Complaint for Declaratory

Judgment of Patent Invalidity and Noninfringement ("Complaint") of Abbott Laboratories and

Abbott Cardiovascular Systems, Inc. (collectively, "Plaintiffs"), hereby state as follows:

**COMPLAINT 1.**    Abbott Laboratories is a corporation organized under the laws of the State of Illinois and has a principal place of business at 100 Abbott Park Road, North Chicago, Illinois.

**ANSWER 1:**    Cordis admits the allegations in Paragraph 1.

**COMPLAINT 2.**    Abbott Cardiovascular Systems, Inc. ("ACS"), formerly Advanced Cardiovascular Systems, Inc., is a corporation organized under the laws of the State of California and has a principal place of business at 3200 Lakeside Drive, Santa Clara, California. ACS is a subsidiary of Abbott Laboratories.

**ANSWER 2:**    Cordis is without knowledge or information sufficient to form a belief

as to the truth of the allegations in Paragraph 2.

**COMPLAINT 3.**    On information and belief, Johnson and Johnson, Inc. is a corporation organized under the laws of the State of New Jersey and has a principal place of business at One Johnson and Johnson Plaza, New Brunswick, New Jersey.

**ANSWER 3:**    Cordis admits the allegations in Paragraph 3.

**COMPLAINT 4.**    On information and belief, Cordis Corporation ("Cordis") is a corporation organized under the laws of the State of Florida and has a principal place of business in Miami Lakes, Florida. Cordis is a subsidiary of Johnson and Johnson, Inc.

**ANSWER 4:**    Cordis admits that Cordis Corp. is a corporation organized under the laws of the State of Florida and is a subsidiary of J&J. Cordis denies the remaining allegations in Paragraph 4.

**COMPLAINT 5.**    This action arises under the Patent Laws of the United States (35 U.S.C. § 1 *et seq.*).

**ANSWER 5:**    Cordis admits the allegations in Paragraph 5.

**COMPLAINT 6.**    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

**ANSWER 6:**    Cordis admits that 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 provide bases for jurisdiction in this Court over the subject matter of this action but further states that on May 15, 2007, prior to Plaintiffs filing this complaint in Delaware, Cordis Corp. filed a parallel patent infringement action on the same patent against Abbott Laboratories in the United States District Court for the District of New Jersey, and that case is captioned Cordis Corporation v. Abbott Laboratories, C.A. No. 07-2265-JAP. Cordis denies the remaining allegations in Paragraph 6.

**COMPLAINT 7.**    This Court has personal jurisdiction, general and specific, over J&J.

**ANSWER 7:**    Cordis admits the allegations in Paragraph 7.

**COMPLAINT 8.**    On information and belief, J&J has systematic and continuous contacts in this judicial district.

**ANSWER 8:**    Cordis admits that it has systematic and continuous contacts sufficient for the Court to exercise personal jurisdiction over Cordis. Cordis denies the remaining allegations in Paragraph 8.

**COMPLAINT 9.**    On information and belief, J&J regularly avails itself of the benefits of this judicial district, including the jurisdiction of the courts.

**ANSWER 9:**    Cordis admits that it has, in certain instances, availed itself of the benefits of this judicial district, and, in certain instances, this included the jurisdiction of the courts. Cordis denies the remaining allegations in Paragraph 9.

**COMPLAINT 10.**    On information and belief, J&J regularly transacts business within this judicial district.

**ANSWER 10:**    Cordis admits that it transacts business within this judicial district. Cordis denies the remaining allegations in Paragraph 10.

**COMPLAINT 11.**    On information and belief, J&J regularly sells products in this judicial district. J&J derives substantial revenues from sales in this district.

**ANSWER 11:**    Cordis admits that it sells products in this judicial district. Cordis further admits that it derives revenue from sales of products in this district. Cordis denies the remaining allegations in Paragraph 11.

**COMPLAINT 12.**    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

**ANSWER 12:**    Cordis admits that 28 U.S.C. §§ 1391(b) and (c) provide bases for venue in this Court but further states that on May 15, 2007, prior to Plaintiffs filing this complaint in Delaware, Cordis Corp. filed a parallel patent infringement action on the same patent against Abbott Laboratories in the United States District Court for the District of New Jersey, and that case is captioned Cordis Corporation v. Abbott Laboratories, C.A. No. 07-2265-JAP. Cordis denies the remaining allegations in Paragraph 12.

**COMPLAINT 13.**    J&J, and in particular Cordis, directly competes with Abbott in the field of intravascular stents used to treat coronary artery disease.

**ANSWER 13:**    Cordis admits the allegations in Paragraph 13.

**COMPLAINT 14.**    The coronary stent industry is highly litigious. J&J, and in particular Cordis, has a well-known history of suing competitors in this field for patent infringement.

**ANSWER 14:**    Cordis admits that there has been litigation in the stent industry, that

Cordis has in the past brought actions for patent infringement concerning stents, and that

Cordis's stent patents have been found after jury trials to be valid and infringed.  Cordis denies

the remaining allegations in Paragraph 14.

**COMPLAINT 15.**    On three occasions within the last ten years, Cordis sued ACS in
this district, alleging patent infringement involving angioplasty catheters or stents for treating
coronary artery disease.  (*Cordis Corporation, et al. v. Advanced Cardiovascular Systems, Inc, et
al., C.A. No. 97-550-SLR; Cordis Corporation, et al. v. Advanced Cardiovascular Systems, Inc.,
et al.  C.A. No. 97-635-SLR; and Cordis Corporation, et al. v. Advanced Cardiovascular
Systems, Inc., et al., C.A. No. 98-065-SLR*).

**ANSWER 15:**    Cordis admits that it brought the actions set forth in this paragraph.

Cordis further states that the jury in Case No. 97-550-SLR found Cordis's patents valid and

infringed.

**COMPLAINT 16.**    On three additional occasions within the last ten years, Cordis
initiated patent infringement actions in this judicial district involving angioplasty catheters or
stents for treating coronary artery disease.  (*Cordis Corp. v. Boston Scientific Corp.,* C.A. No.
98-197-SLR; *Cordis Corp. v. Medtronic AVE, Inc.,* C.A. No. 00-886-SLR; and *Cordis Corp. v.
Boston Scientific Corp.,* C.A. No. 03-027-SLR).

**ANSWER 16:**    Cordis admits that it brought the actions set forth in this paragraph.

Cordis further states that the jury in Case No. 98-197-SLR found Cordis's patents valid and

infringed.

**COMPLAINT 17.**    In early 2006, J&J and Boston Scientific Corporation ("BSC")
each were bidding to acquire assets of Guidant Corporation ("Guidant"), which at the time was
the parent corporation of ACS.  In conjunction with BSC's bid, ACS would be acquired by
Abbott Laboratories, which was the ultimate result.

**ANSWER 17:**    Cordis admits that J&J and Guidant Corporation ("Guidant") entered

into an Amended and Restated Agreement and Plan of Merger dated November 15, 2005.

Cordis further admits that in December 2005, Boston Scientific Corporation ("BSC") announced

that it had made a bid to acquire Guidant.  Cordis further admits that on January 25, 2006,

Guidant and Boston Scientific announced that they had entered into a merger agreement, and

Guidant announced that Abbott would acquire Guidant's intervention and endovascular businesses. Cordis denies the remaining allegations in Paragraph 17.

**COMPLAINT 18.**    One of the key assets of ACS was the XIENCE V drug eluting stent system ("XIENCE V"), which elutes a proprietary drug known as everolimus. ACS holds an exclusive patent license to use everolimus for drug eluting stents. In clinical trials, everolimus has proven superior to other drugs.

**ANSWER 18:**    Cordis admits that ACS had certain rights to the XIENCE V drug eluting stent, which releases everolimus. Cordis further admits that everolimus is an analog of sirolimus and has the same method of action as sirolimus, which has been shown to be effective to treat restenosis when administered via a drug eluting stent. Cordis denies that everolimus has proven to be superior to sirolimus. Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18.

**COMPLAINT 19.**    On information and belief, J&J believed in early 2006 that the XIENCE V would be launched within a few months.

**ANSWER 19:**    Cordis denies the allegations in Paragraph 19.

**COMPLAINT 20.**    United States Application No. 11/467,035 entitled "Load Delivery of Rapamycin for Treatment of Proliferative Sequelae Associated with PTCA Procedures, Including Delivery Using a Modified Stent" (the "Falotico '035 application") was filed on August 24, 2006.

**ANSWER 20:**    Cordis admits the allegations in Paragraph 20.

**COMPLAINT 21.**    The Falotico '035 application is related to and claims priority to United States Patent Nos. 6,808,536 ("the Wright '536 patent") and 6,585,764 ("the Wright '764 patent).

**ANSWER 21:**    Cordis admits the allegations in Paragraph 21.

**COMPLAINT 22.**    On information and belief, the subject matter claimed in the Falotico '035 application is not patentably distinct from subject matter claimed in at least the Wright '764 patent and the Wright '536 patent.

**ANSWER 22:**    Cordis denies the allegations in Paragraph 22.

**COMPLAINT 23.**    On information and belief, the Falotico '035 patent issued on May 15, 2007 as United States Patent No. 7,217,286.

**ANSWER 23:**    Cordis admits the allegations in Paragraph 23.

**COMPLAINT 24.**    On information and belief, J&J undertook a public campaign to cast a cloud over the launch of the XIENCE V.

**ANSWER 24:**    Cordis denies the allegations in Paragraph 24.

**COMPLAINT 25.**    On information and belief, as a main thrust of this public campaign, J&J alleged that the XIENCE V would infringe patents allegedly owned by J&J and that J&J would sue Abbott for infringement by the XIENCE V following its launch.  On information and belief, J&J's allegations related to at least the Wright '764 patent, the Wright '536 patent, and United States Patent No. 6,776,796 ("the Falotico '796 patent").

**ANSWER 25:**    Cordis denies the allegations in Paragraph 25.

**COMPLAINT 26.**    On information and belief, J&J broadcasted threatening statements to industry analysts regarding alleged infringement by the XIENCE V, for publication in furtherance of J&J's public campaign.

**ANSWER 26:**    Cordis denies the allegations in Paragraph 26.

**COMPLAINT 27.**    For example, the Prudential Equity Group, LLC published a report on January 20, 2006, titled "JNJ: Takes Off The Gloves In Its Fight With Boston Scientific For Guidant," attached as Exhibit C ("the Prudential report").  In the Prudential report, parties are identified by their stock symbols: ABT for Abbott, GDT for Guidant, JNJ for J&J, and BSX for BSC.

**ANSWER 27:**    Cordis admits that what Plaintiffs purport to be a report published by

Prudential Equity Group, LLC ("Prudential") on January 20, 2006, titled "JNJ:  Takes Off The

Gloves In Its Fight With Boston Scientific For Guidant" is attached as Exhibit C to the

Complaint.  Cordis further admits that the report identifies Abbott, Guidant, J&J and BSC by

their stock symbols.  Cordis is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in Paragraph 27.

**COMPLAINT 28.**    On information and belief, the Prudential report relied on information provided in pertinent part by J&J.

**ANSWER 28:**    Cordis admits that in January 2006 it communicated with Lawrence

Biegelsen, an analyst for Prudential, regarding the respective offers for Guidant made by J&J and

BSC. Cordis denies the remaining allegations in Paragraph 28.

**COMPLAINT 29.**     Among other things, the Prudential report stated:

JNJ claims that 2 of its patents may be infringed if a company tries to launch a drug-eluting stent coated with a rapamycin derivative such as . . .GDT's everolimus.  The potential for JNJ to prevent ABT and BSX from marketing the Xience-V DES, could give the GDT board pause for approving a BSX-GDT merger.

***

If BSX acquires GDT, BSX would sell GDT's vascular intervention (VI) business, including shared rights to GDT's promising everolimus-coated stent, Xience-V, to ABT.  Although JNJ's patents have never been litigated, JNJ believes it has a strong intellectual property (IP) position with regard to the use of rapamycin derivatives on a stent.  JNJ could pursue a preliminary injunction if ABT and BSX try to launch an everolimus-coated... stent...  According to JNJ, the key patents are the Falotico (6,776,796) and Wright (6,585,764) patents.

**ANSWER 29:**     Cordis states that the excerpts quoted in Paragraph 29 appear to be

taken from Exhibit C to the Complaint, but with certain language omitted.  Cordis denies the

remaining allegations in Paragraph 29.

**COMPLAINT 30.**     On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to Prudential analysts.

**ANSWER 30:**     Cordis denies the allegations in Paragraph 30.

**COMPLAINT 31.**     On January 23, 2006, A.G. Edwards & Sons, Inc., published a report titled "Healthcare Industry Note:  The Game May Be Far From Over," attached as Exhibit D ("the AG Edwards report").

**ANSWER 31:**     Cordis admits that what Plaintiffs purport to be a report published by

A.G. Edwards & Sons, Inc. ("AG Edwards") on January 23, 2006, entitled "Healthcare Industry

Notes:  The Game May Be Far From Over" is attached as Exhibit D to the Complaint.  Cordis is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 31.

**COMPLAINT 32.**     On information and belief, the AG Edwards report relied on information provided in pertinent part by J&J.

**ANSWER 32:**    Cordis admits that in January 2006 it communicated with Jan Wald, an analyst for AG Edwards, regarding the respective offers for Guidant made by J&J and BSC. Cordis denies the remaining allegations in Paragraph 32.

**COMPLAINT 33.**    Among other things, the AG Edwards report stated:

We have had conversations with Johnson & Johnson (JNJ) and Boston Scientific (BSX) and others recently that lead us to believe that the Guidant (GDT) game is far from over.

\* \* \*

We were also reminded by JNJ that it had three patents related to '-limus' compounds that it thought precluded any other company from using such a compound on a stent.  We were only given two patent numbers (6776796 [the Falotico '796 patent] and 6585764 [the Wright '764 patent])....

**ANSWER 33:**    Cordis states that the excerpts quoted in Paragraph 33 appear to be taken from Exhibit D to the Complaint, but with certain language omitted.  Cordis denies the remaining allegations in Paragraph 33.

**COMPLAINT 34.**    On information and belief, the third patent referenced in J&J's threatening statements was the Wright '536 patent.

**ANSWER 34:**    Cordis denies the allegations in Paragraph 34.

**COMPLAINT 35.**    On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to AG Edwards analysts.

**ANSWER 35:**    Cordis denies the allegations in Paragraph 35.

**COMPLAINT 36.**    On January 13, 2006, Citigroup published a report titled "An INTERESTing New Offer," attached as Exhibit E ("the January 13 Citigroup report").

**ANSWER 36:**    Cordis admits that what Plaintiffs purport to be a report published by Citigroup on January 13, 2006, entitled "An INTERESTing New Offer" is attached as Exhibit E to the Complaint.  Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36.

**COMPLAINT 37.**    On information and belief, the January 13, 2006 Citigroup report relied on information provided in pertinent part by J&J.

**ANSWER 37:**    Cordis admits that in January 2006 it communicated with Matthew Dodds, an analyst for Citigroup, regarding the respective offers for Guidant made by J&J and BSC. Cordis denies the remaining allegations in Paragraph 37.

**COMPLAINT 38.**    Among other things, the January 13, 2006 Citigroup report stated:

The [Wright and Falotico] patents have never been challenged or enforced because no other company has launched a limus-based drug-eluting stent in the US, but are likely to eventually lead to litigation.

**ANSWER 38:**    Cordis states that the excerpts quoted in Paragraph 33 appear to be taken from Exhibit E to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 38.

**COMPLAINT 39.**    Citigroup published an additional report on March 23, 2006 titled "Deconstructing Xience," attached as Exhibit F ("the March 23, 2006 Citigroup report"). In the March 23, 2006 Citigroup report, J&J is identified by its stock symbol JNJ.

**ANSWER 39:**    Cordis admits that what Plaintiffs purport to be a report published by Citigroup on March 23, 2006, entitled "Deconstructing Xience" is attached as Exhibit F to the Complaint. Cordis further admits that the report identifies J&J by its stock symbol. Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39.

**COMPLAINT 40.**    On information and belief, the March 23, 2006 Citigroup report relied on information provided in pertinent part by J&J.

**ANSWER 40:**    Cordis denies the allegations in Paragraph 40.

**COMPLAINT 41.**    Among other things, the March 23, 2006 Citigroup report stated:

Everolimus will likely face two IP challenges from JNJ as both its Falotico and Wright patents claim the use of a limus analogue on a stent.

**ANSWER 41:**    Cordis states that the excerpts quoted in Paragraph 41 appear to be taken from Exhibit F to the Complaint, but with certain language omitted.  Cordis denies the remaining allegations in Paragraph 41.

**COMPLAINT 42.**    On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to Citigroup analysts.

**ANSWER 42:**    Cordis denies the allegations in Paragraph 42.

**COMPLAINT 43.**    On January 30, 2006, Lehman Brothers published a report titled "The Risks - Part I," attached as Exhibit G ("the Lehman Brothers report").  In the Lehman Brothers report, parties are identified by their stock symbols: ABT for Abbott; GDT for Guidant; and JNJ for J&J.

**ANSWER 43:**    Cordis admits that what Plaintiffs purport to be a report published by Lehman Brothers on January 30, 2006, entitled "The Risks – Part 1" is attached as Exhibit G to the Complaint.  Cordis admits that the report identifies Abbott, Guidant, and J&J by their stock symbols.  Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43.

**COMPLAINT 44.**    On information and belief, the Lehman Brothers report relied on information provided in pertinent part by J&J.

**ANSWER 44:**    Cordis admits that in January 2006 it communicated with Bob Hopkins, an analyst for Lehman Brothers, regarding the respective offers for Guidant made by J&J and BSC.  Cordis denies the remaining allegations in Paragraph 44.

**COMPLAINT 45.**    Among other things, the Lehman Brothers report stated:

There are even hypothetical litigations to contend with as JNJ has strongly suggested that they feel GDT and ABT may violate JNJ/Wyeth DES patents covering the "limus" family of drugs.

**ANSWER 45:**    Cordis states that the excerpts quoted in Paragraph 45 appear to be taken from Exhibit G to the Complaint, but with certain language omitted.  Cordis denies the remaining allegations in Paragraph 45.

**COMPLAINT 46.**    On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to Lehman Brothers analysts.

**ANSWER 46:**    Cordis denies the allegations in Paragraph 46.

**COMPLAINT 47.**    On March 14, 2006, Merrill Lynch published a report titled "More legal wrangling for J&J possible," attached as Exhibit H ("the Merrill Lynch report"). In the Merrill Lynch report, J&J is identified by its stock symbol JNJ.

**ANSWER 47:**    Cordis admits that what Plaintiffs purport to be a report published by Merrill Lynch on March 14, 2006, entitled "More legal wrangling for J&J possible" is attached as Exhibit H to the Complaint. Cordis further admits that the report identifies J&J by its stock symbol. Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47.

**COMPLAINT 48.**    On information and belief, the Merrill Lynch report relied on information provided in pertinent part by J&J.

**ANSWER 48:**    Cordis denies the allegations in Paragraph 48.

**COMPLAINT 49.**    Among other things, the Merrill Lynch report stated:

JNJ has two patents (Wright and Falotico) which appear to relate to the elution of characteristics of "olimus" compounds; JNJ's Cypher DES uses sirolimus, a member of the olimus family of drugs; other olimus drugs include Guidant's everolimus and Abbott/Medtronic's zotarolimus (ABT-578). The European launch of Guidant's Xience DES, which the company has targeted for Q2:06, could trigger possible legal activity since we understand U.S. patent law prohibits domestic manufacture of a product for sale outside the U.S. if there's been infringement of intellectual property.

**ANSWER 49:**    Cordis states that the excerpt quoted in Paragraph 49 appear to be taken from Exhibit H to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 49.

**COMPLAINT 50.**    On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to Merrill Lynch analysts.

**ANSWER 50:**    Cordis denies the allegations in Paragraph 50.

**COMPLAINT 51.** On information and belief, J&J broadcast threatening statements to other news outlets regarding alleged infringement by the XIENCE V, for publication in furtherance of J&J's public campaign.

**ANSWER 51:** Cordis denies the allegations in Paragraph 51.

**COMPLAINT 52.** On January 23, 2006, the International Herald Tribune published an article headlined "J&J works to discredit rival offer for Guidant," attached as Exhibit I ("the International Herald article").

**ANSWER 52:** Cordis admits that what Plaintiffs purport to be an article published by

the International Herald Tribune on January 23, 2006, headlined "J&J works to discredit rival

offer for Guidant" is attached as Exhibit I to the Complaint. Cordis is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

52.

**COMPLAINT 53.** On information and belief, the International Herald article relied on information provided in pertinent part by J&J.

**ANSWER 53:** Cordis denies the allegations in Paragraph 53.

**COMPLAINT 54.** Among other things, the International Herald article stated:

"J&J is communicating to the Street that Boston Scientific's $80-a-share offer for Guidant is fraught with uncertainty," Lawrence Biegelsen, an analyst with Prudential in New York, said in a note to clients sent on Friday.

***

Johnson & Johnson's campaign consists of telling analysts and shareholders that Boston Scientific is in over its head and is tempting patent litigation that may undercut Boston Scientific's plans.

"They're trying to tell all of us that there are patents out there that they have that they feel can stop Boston Scientific," said Jan David Wald, an analyst with A.G. Edwards. Wald said he had been called by a Johnson & Johnson employee, whom he declined to name.

Johnson & Johnson told analysts it was considering filing patent infringement lawsuits over stent drug coatings to keep Boston Scientific and its bidding partner, Abbott Laboratories, from profiting from the new Guidant devices, according to Biegelsen of Prudential.

* * *

Boston Scientific and J&J have been fighting in court for years over patent-infringement cases related to stent design. At the moment, the two companies are alone in the U.S. stent market, with Boston Scientific holding a 55 percent share.

* * *

The potential for Johnson & Johnson to prevent Abbott and Boston Scientific from marketing Guidant's next-generation, heart stent "could give the Guidant board pause for approving a Boston Scientific-Guidant merger," Biegelsen said. "J&J claims that two of its patents may be infringed if a company tries to launch a drug-eluting stent coated with"... Guidant's everolimus, he wrote.

**ANSWER 54:**    Cordis states that the excerpts quoted in Paragraph 54 appear to be taken from Exhibit I to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 54.

**COMPLAINT 55.**    On January 20, 2006, the Boston Globe published an article headlined "Suitors take Guidant fight to The Street," attached as Exhibit J ("the Boston Globe article").

**ANSWER 55:**    Cordis admits that what Plaintiffs purport to be an article published by the Boston Globe on January 20, 2006, headlined "Suitors take Guidant fight to The Street" is attached as Exhibit J to the Complaint. Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55.

**COMPLAINT 56.**    On information and belief, the Boston Globe article relied on information provided in pertinent part by J&J.

**ANSWER 56:**    Cordis denies the allegations in Paragraph 56.

**COMPLAINT 57.**    Among other things, the Boston Globe article stated:

[J&J] has also raised prospects that it could use patents and existing ties to Guidant to derail or complicate Boston Scientific's offer, said Matthew Dodds, an analyst for Citigroup who is skeptical about Guidant's value to both companies.

**ANSWER 57:**    Cordis states that the excerpts quoted in Paragraph 57 appear to be taken from Exhibit J to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 57.

- 13 -

**COMPLAINT 58.**    Also on January 20, 2006, Crain's Chicago Business published an article headlined "Abbott stock falls on concerns over success of Guidant bid," attached as Exhibit K, ("the Crain's article").

**ANSWER 58:**    Cordis admits that what Plaintiffs purport to be an article published by Crain's Chicago Business on January 20, 2006, headlined "Abbott stock falls on concerns over success of Guidant bid" is attached as Exhibit K to the Complaint.  Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 58.

**COMPLAINT 59.**    On information and belief, the Crain's article relied on information provided in pertinent part by J&J.

**ANSWER 59:**    Cordis denies the allegations in Paragraph 59.

**COMPLAINT 60.**    Among other things, the Crain's article stated:

The analyst, Prudential Equity Group, LLC's Larry Biegelsen, reported that Guidant's board could balk at Boston Scientific and Abbott's joint bid because Johnson & Johnson, a competing bidder for Guidant, claims its patents would be violated if Abbott markets its own drug-eluting stent or those made by Guidant.

**ANSWER 60:**    Cordis states that the excerpts quoted in Paragraph 60 appear to be taken from Exhibit K to the Complaint, but with certain language omitted.  Cordis denies the remaining allegations in Paragraph 60.

**COMPLAINT 61.**    On January 21, 2006, Reuters published an article headlined "Abbott, Boston shares off J&J patent threat" attached as Exhibit L ("the Reuters article").

**ANSWER 61:**    Cordis admits that what Plaintiffs purport to be an article published by Reuters on January 21, 2006, headlined "Abbott, Boston shares off J&J patent threat" is attached as Exhibit L to the Complaint.  Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61.

**COMPLAINT 62.**    On information and belief, the Reuters article relied on information provided in pertinent part by J&J.

**ANSWER 62:**    Cordis admits that in January 2006 it communicated with Julie

Stennhuysen, a reporter for Reuters, regarding the respective offers for Guidant made by J&J and

BSC.  Cordis denies the remaining allegations in Paragraph 62.

> **COMPLAINT 63.**    Among other things, the Reuters article stated:
>
> One analyst, who asked not to be named, said J&J management was making rounds on
> Wall Street trying to fan fears about the Boston Scientific bid.  The analyst said J&J was
> arguing that Boston Scientific's bid was breaking its bank, that its assumptions on
> Guidant's cardiac rhythm management were too aggressive and that there was intellectual
> property infringement that would limit potential of important products.

**ANSWER 63:**    Cordis states that the excerpts quoted in Paragraph 63 appear to be

taken from Exhibit L to the Complaint, but with certain language omitted.  Cordis denies the

remaining allegations in Paragraph 63.

**COMPLAINT 64.**    On January 24, 2006, Medical Device Daily published an article

headlined "J&J offer rumors persist as Guidant has more ICD issues," attached as Exhibit M

("the Medical Device Daily article").

**ANSWER 64:**    Cordis admits that what Plaintiffs purport to be an article published by

Medical Device Daily on January 24, 2006, headlined "J&J offer rumors persist as Guidant has

more ICD issues" is attached as Exhibit M to the Complaint.  Cordis is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

64.

**COMPLAINT 65.**    On information and belief, the Medical Device Daily article relied

on information provided in pertinent part by J&J.

**ANSWER 65:**    Cordis denies the allegations in Paragraph 65.

**COMPLAINT 66.**    Among other things, the Medical Device Daily article stated:

> Fueling this speculation were rumors, some of which apparently were planted by J&J
> personnel as part of an organized campaign to undermine the Boston Scientific offer in
> the minds of analysts, that two of its patents may be infringed if an unnamed company
> tries to launch a drug-eluting stent coated withed a derivative of rapamycin.

**ANSWER 66:**    Cordis states that the excerpts quoted in Paragraph 66 appear to be taken from Exhibit M to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 66.

**COMPLAINT 67.**    On January 26, 2006, The Wall Street Journal published an article headline "Boston Scientific Faces Pivotal Test After Victory in Fight for Guidant," attached as Exhibit N ("the Wall Street Journal article").

**ANSWER 67:**    Cordis admits that what Plaintiffs purport to be an article published by The Wall Street Journal on January 26, 2006, headlined "Boston Scientific Facts Pivotal Test After Victory in Fight for Guidant" is attached as Exhibit N to the Complaint. Cordis is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 67.

**COMPLAINT 68.**    On information and belief, the Wall Street Journal article relied on information provided in pertinent part by J&J.

**ANSWER 68:**    Cordis admits that in January 2006 it communicated with Sylvia Westphal, a reporter for the Wall Street Journal, regarding the respective offers for Guidant made by J&J and BSC. Cordis denies the remaining allegations in Paragraph 68.

**COMPLAINT 69.**    Among other things, the Wall Street Journal article stated that:

Another potential wrinkle arises in the intellectual-property rights surrounding stents – an area that's been the subject of extensive litigation in the industry. Citigroup analyst Matthew Dodds says J&J holds patents on methods of using "limus-type drugs on stents -- including the everolimus on Guidant's stent, as well as a drug on an Abbott stent.

**ANSWER 69:**    Cordis states that the excerpts quoted in Paragraph 69 appear to be taken from Exhibit N to the Complaint, but with certain language omitted. Cordis denies the remaining allegations in Paragraph 69.

**COMPLAINT 70.**    On information and belief, J&J anticipated and intended that Abbott and others would become aware of threatening statements made by J&J to analysts and others.

**ANSWER 70:**    Cordis denies the allegations in Paragraph 70.

- 16 -

**COMPLAINT 71.** On information and belief, J&J made additional threatening statements to industry analysts, asserting that J&J could prevent Abbott from making or selling the XIENCE V by suing for infringement of patents in the Wright and/or Falotico families. On information and belief, J&J anticipated and intended that Abbott and others would become aware of these threatening statements.

**ANSWER 71:** Cordis denies the allegations in Paragraph 71.

**COMPLAINT 72.** Abbott and others did become aware of J&J's threatening statements.

**ANSWER 72:** Cordis denies the allegations in Paragraph 72.

**COMPLAINT 73.** For example, on January 20, 2006, Avram Goldstein of Bloomberg contacted Abbott regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 73:** Cordis is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73.

**COMPLAINT 74.** On January 13, 2006, Bruce Nudell of Sanford C. Bernstein contacted Guidant regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 74:** Cordis is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.

**COMPLAINT 75.** Also on January 13, 2006, The Shaw Group contacted Guidant regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 75:** Cordis is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

**COMPLAINT 76.** On January 20, 2006, Avram Goldstein of Bloomberg contacted Guidant regarding the Wright and Falotico patents in relation to XIENCE V.

**ANSWER 76:** Cordis is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

**COMPLAINT 77.** Again on January 20, 2006, Barnaby Feder of the New York Times contacted Guidant regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 77:** Cordis is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

**COMPLAINT 78.**    On January 31, 2006, Steve Silva of Joele Frank contacted Guidant regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 78:**    Cordis is without knowledge or information sufficient to form a belief

as to the truth of the allegations in Paragraph 78.

**COMPLAINT 79.**    On March 23, 2006, Jennifer B. Pearlman of Burgundy Asset Management contacted Guidant regarding the Wright and Falotico patents in relation to the XIENCE V.

**ANSWER 79:**    Cordis is without knowledge or information sufficient to form a belief

as to the truth of the allegations in Paragraph 79.

**COMPLAINT 80.**    On information and belief, J&J intended to create a substantial controversy between J&J and Abbott regarding alleged infringement of patents in the Wright and/or Falotico families by the XIENCE V.

**ANSWER 80:**    Cordis denies the allegations in Paragraph 80.

**COMPLAINT 81.**    On information and belief, J&J intended to create the apprehension in Abbott and others that J&J would sue Abbott, asserting that the XIENCE V allegedly infringes patents in the Wright and/or Falotico families.

**ANSWER 81:**    Cordis denies the allegations in Paragraph 81.

**COMPLAINT 82.**    In March 2006, Guidant publicly announced that the XIENCE V launch would be delayed due to an issue related to manufacturing.

**ANSWER 82:**    Cordis admits the allegations in Paragraph 82.

**COMPLAINT 83.**    The XIENCE V was subsequently launched in Europe.  On information and belief, J&J is aware that the XIENCE V has launched and is preparing to sue Abbott for infringement by the XIENCE V of patents in the Wright and/or Falotico families.

**ANSWER 83:**    Cordis admits that it is aware that Abbott has sold the XIENCE V in

Europe.  Cordis further admits that on May 15, 2007, Cordis Corp. filed a Complaint against

Abbott in the United States District Court for the District of New Jersey, alleging that Abbott's

XIENCE V infringes U.S. Patent No. 7,217,286 (the "Falotico '7286 Patent").  Cordis further

admits that on May 29, 2007, Cordis Corp. filed a Complaint against Abbott in the United States

District Court for the District of New Jersey, alleging that Abbott's XIENCE V infringes U.S.

Patent No. 7,233,286 (the "Wright '3286 Patent"). Cordis further admits that on June 12, 2007,

Cordis Corp. filed a Complaint against Abbott in the United States District Court for the District

of New Jersey, alleging that Abbott's XIENCE V infringes U.S. Patent 7,229,473 (the "Falotico

'9473 Patent"). Cordis denies the remaining allegations in Paragraph 83.

**COMPLAINT 84.** On information and belief, J&J has never withdrawn or retracted
any of its threatening statements that, following the launch of the XIENCE V, J&J would sue
Abbott for infringement of the patents in the Wright and/or Falotico families.

**ANSWER 84:** Cordis denies the allegation that it made statements threatening to sue

Guidant or Abbott for patent infringement of any of the Wright and/or Falotico patents prior to

the filing of Cordis' Complaints, and therefore denies the allegations in Paragraph 84.

**COMPLAINT 85.** On information and belief, in furtherance of its campaign to cast a
cloud over the launch of the XIENCE V, J&J made threatening statements to Guidant.

**ANSWER 85:** Cordis denies the allegations in Paragraph 85.

**COMPLAINT 86.** On January 12, 2006, J&J contacted Guidant and informed
Guidant that if Boston Scientific acquired Guidant, Abbott and Boston Scientific would have
problems with the Wright and Falotico patent families.

**ANSWER 86:** Cordis admits that on or about January 12, 2006, J&J contacted

Guidant to discuss information that both companies' investor relations departments might want to

highlight when discussing the competing J&J and BSC bids with the investment community.

Cordis denies the remaining allegations in Paragraph 86.

**COMPLAINT 87.** On January 13, 2006, J&J again contacted Guidant. J&J sent
Guidant a document asserting that J&J's intellectual property portfolio included patents directed
to Everolimus when used on a stent, Abbott would not receive access to these patent in the event
that Boston Scientific were to acquire Guidant, and any drug eluting stent using Everolimus,
including the XIENCE V, may infringe these patents.

**ANSWER 87:** Cordis admits that on January 13, 2006, a J&J corporate

communications representative emailed a peer at Guidant a "talking points" document entitled

"Why do you think J&J's offer of $XX is superior to BSX's offer of $73?" and explained in her

email that J&J was intending to use the substance of this document when responding to media inquires. Cordis further admits that one of the bullet points in that "talking points" document states that J&J's intellectual property drug-eluting stent portfolio includes patents directed to Rapamycin and its analogues including Everolimus when used on a stent and that Abbott would not receive access to this if BSC were to acquire Guidant. Cordis denies the remaining allegations in Paragraph 87.

**COMPLAINT 88.**    On information and belief, by these statements J&J intended to create a substantial controversy between J&J and Abbott regarding alleged infringement of patents in the Wright and/or Falotico families by the XIENCE V.

**ANSWER 88:**    Cordis denies the allegations in Paragraph 88.

**COMPLAINT 89.**    On information and belief, by these statements J&J intended to create the apprehension in Abbott and others that J&J would sue Abbott, following the launch of the XIENCE V, asserting that the XIENCE V allegedly infringes patents in the Wright and/or Falotico families.

**ANSWER 89:**    Cordis denies the allegations in Paragraph 89.

**COMPLAINT 90.**    On August 24, 2006, J&J filed a "Petition to Make Special Because of Actual Infringement ("the Petition") with the United States Patent and Trademark Office in the matter of United States Application Serial No. 11/467,035 ("the Falotico '035 application"). On information and belief, on May 15, 2007, the Falotico '035 application issued as United States Patent No. 7,217,286. A copy of the Petition is attached as Exhibit O.

**ANSWER 90:**    Cordis admits the allegations in Paragraph 90.

**COMPLAINT 91.**    In the Petition, J&J asserted that it could sue Abbott for infringement by the XIENCE V immediately upon issuance of the Falotico '035 application as a patent. Among other things, counsel for J&J asserted:

Guidant's vascular business has recently been acquired by Abbott Laboratories (Exhibit 3). Abbott has announced that it intends to launch the XIENCE™ V in Europe in the third quarter of 2006 (Exhibit 4).

* * *

I have made a rigid comparison of the XIENCE™ V product, as described in Guidant press releases, with the claims of the instant application. In my opinion, the XIENCE™ V product is unquestionably within the scope of at least claims 1 to 5 on file in this application.

* * *

It is therefore my opinion that Guidant is making a product in the United States to support the European launch that is unquestionably within the scope of at least claims 1 to 5 of the instant application, and that a patent containing these claims could immediately be asserted upon issue.

**ANSWER 91:**    Cordis states that the excerpts quoted in Paragraph 91 appear to be

taken from Exhibit O to the Complaint, but with certain language omitted.  Cordis denies the

remaining allegations in Paragraph 91.

**COMPLAINT 92.**    On information and belief, J&J intended to create a substantial controversy between J&J and Abbott regarding the XIENCE V's alleged infringement of the Falotico '286 patent.

**ANSWER 92:**    Cordis denies the allegations in Paragraph 92.

**COMPLAINT 93.**    On information and belief, J&J intended to create the apprehension in Abbot and others that J&J would sue Abbott asserting that the XIENCE V allegedly infringes the Falotico '286 patent.

**ANSWER 93:**    Cordis denies the allegations in Paragraph 93.

**COMPLAINT 94.**    On information and belief, J&J is preparing to sue Abbott for infringement by the XIENCE V of the Falotico '286 patent.

**ANSWER 94:**    Cordis admits that on May 15, 2007, Cordis Corp. filed a Complaint

against Abbott in the United States District Court for the District of New Jersey, alleging that

Abbott's XIENCE V infringes U.S. Patent No. 7,217,286.  Cordis denies the remaining

allegations in Paragraph 94.

**COMPLAINT 95.**    On September 25, 2006, J&J filed a complaint in the District Court for the Southern District of New York.  Among other things, J&J alleges that Abbott Laboratories tortiously interfered with J&J's intended acquisition of Guidant.  The complaint seeks no less than $5.5 billion in damages.  A copy of the complaint is attached as Exhibit P.

**ANSWER 95:**    Cordis admits the allegations in Paragraph 95.

**COMPLAINT 96.**    Although the events cited in the complaint occurred over eight months ago, J&J timed the lawsuit, on information and belief, in anticipation of the then imminent launch of the XIENCE V.  Both the timing of the lawsuit and the amount of the

damages claimed manifest J&J's intent to cast a cloud over Abbott and interfere with the then imminent launch of the XIENCE V.

**ANSWER 96:**    Cordis denies the allegations in Paragraph 96.

**COMPLAINT 97.**    Abbott has manufactured and continues to manufacture, at its facilities in the United States, thousands of the XIENCE V.

**ANSWER 97:**    Cordis admits the allegations in Paragraph 97.

**COMPLAINT 98.**    On information and belief, J&J created a substantial controversy between J&J and Abbott regarding the alleged infringement of the Falotico '286 patent by the XIENCE V.

**ANSWER 98:**    Cordis admits that, upon the filing of Cordis's Complaint against

Abbott in the United States District Court for the District of New Jersey on May 15, 2007, an

actual controversy exists regarding Abbott's infringement of U.S. Patent No. 7,217,286 by the

XIENCE V.  Cordis denies the remaining allegations in Paragraph 98.

**COMPLAINT 99.**    Abbott has a reasonable apprehension that J&J intends to sue Abbott for infringement of the Falotico '286 patent by the XIENCE V.

**ANSWER 99:**    Cordis admits that Cordis Corp. filed a Complaint against Abbott in

the United States District Court for the District of New Jersey on May 15, 2007, alleging that

Abbott's XIENCE V infringes U.S. Patent No. 7,217,286.  Cordis denies the remaining

allegations in Paragraph 99.

**COMPLAINT 100.**    Abbott realleges and incorporates by reference the allegations set forth in paragraphs 1-99.

**ANSWER 100:**    Cordis incorporates and realleges its answers to Paragraphs 1-99 of the

Complaint.

**COMPLAINT 101.**    J&J's actions have created a substantial controversy between J&J and Abbott regarding alleged infringement of the Falotico '286 patent by the XIENCE V.

**ANSWER 101:**    Cordis admits that, upon the filing of Cordis's Complaint against

Abbott in the United States District Court for the District of New Jersey on May 15, 2007, an

actual controversy exists regarding Abbott's infringement of U.S. Patent No. 7,217,286 by the

XIENCE V. Cordis denies the remaining allegations in Paragraph 101.

**COMPLAINT 102.**   J&J has asserted rights under the Falotico '286 patent against the
XIENCE V.

**ANSWER 102:**   Cordis admits that Cordis asserted rights against Abbott on May 15,

2007 under U.S. Patent No. 7,217,286 regarding the XIENCE V by filing a Complaint in the

United States District Court for the District of New Jersey.  Cordis denies the remaining

allegations in Paragraph 102.

**COMPLAINT 103.**   J&J's actions have placed Abbott in reasonable apprehension that it
will be sued for alleged infringement of the Falotico '286 patent by the XIENCE V.

**ANSWER 103:**   Cordis admits that Cordis Corp. filed a Complaint against Abbott in

the United States District Court for the District of New Jersey on May 15, 2007, alleging that

Abbott's XIENCE V infringes U.S. Patent No. 7,217,286.  Cordis denies the remaining

allegations in Paragraph 103.

**COMPLAINT 104.**   On information and belief, the claims of the Falotico '286 patent
are invalid for failure to meet the requirements for patentability, including the requirements of 35
U.S.C. §§ 102, 103, and 112.

**ANSWER 104:**   Defendant denies the allegations in Paragraph 104.

**COMPLAINT 105.**   The XIENCE V does not infringe any valid claim of the Falotico
'286 patent.

**ANSWER 105:**   Defendant denies the allegations in Paragraph 105.

**COMPLAINT 106.**   An actual and justiciable controversy exists between Abbott and
J&J regarding invalidity and noninfringement of the Falotico '286 patent.

**ANSWER 106:**   Cordis admits that, upon the filing of Cordis's Complaint against

Abbott in the United States District Court for the District of New Jersey on May 15, 2007, an

actual controversy exists regarding Abbott's infringement of U.S. Patent No. 7,217,286 by the

XIENCE V.  Cordis denies the remaining allegations in Paragraph 106.

## COUNTERCLAIMS

For its counterclaims, Cordis alleges the following:

## THE PARTIES

1.      Plaintiff Cordis Corporation ("Cordis Corp."), 33 Technology Drive, Warren, New Jersey, is a Florida corporation with a principal place of business in Warren, New Jersey.  Cordis Corp. is a pioneer in developing invasive treatments for vascular disease, including the CYPHER® drug-eluting stent, a drug/device combination for the treatment of coronary artery disease.

2.      Upon information and belief, Defendant Abbott Laboratories ("Abbott"), 100 Abbott Park Road, North Chicago, IL 60064, is an Illinois corporation with a principal place of business in Illinois.

## JURISDICTION AND VENUE

3.      For purposes of Cordis Corp.'s counterclaims, this Court has subject matter jurisdiction over Cordis Corp.'s patent infringement claims under 28 U.S.C. § 1331 and 1338(a).

4.      For purposes of Cordis Corp.'s counterclaims, venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTUAL ALLEGATIONS

5.      Abbott is the manufacturer of a drug-eluting stent named XIENCE V Everolimus Eluting Coronary Stent System ("XIENCE V stent").  Abbott has manufactured thousands of XIENCE V products in the United States for sale in Europe and Asia.  Abbott launched the XIENCE V stent in Europe and the Asia Pacific regions in 2006.

6.      On May 15, 2007, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 7,217,286, entitled "Local Delivery

of Rapamycin For Treatment of Proliferative Sequelae Associated With PTCA Procedures, Including Delivery Using a Modified Stent" (the "Falotico '7286 patent"). The Falotico '7286 patent issued to Robert Falotico and Gerard H. Llanos and is assigned to Cordis Corp. Cordis Corp. holds all right, title and interest in and to the Falotico '7286 patent.

      7.     Abbott has been and is performing acts covered by the claims of the Falotico '7286 patent, including making and/or using the XIENCE V stent in the United States for sale in Europe and Asia.

      8.     At present, there are only two companies marketing drug-eluting stents in the United States – Cordis Corp. and Boston Scientific Corporation. Abbott has publicly announced that it plans to seek approval from the United States Food and Drug Administration in the second quarter of 2007 to sell the XIENCE V stent in the United States. Abbott has also publicly announced that, assuming it receives regulatory approval, it plans to launch the XIENCE V stent in the United States in the first half of 2008. Upon its launch in the United States, the XIENCE V stent will compete directly with Cordis Corp.'s CYPHER stent, reducing Cordis Corp.'s market share and causing Cordis Corp. irreparable harm.

## COUNT I: INFRINGEMENT OF THE FALOTICO '7286 PATENT

      9.     Cordis Corp. realleges paragraphs 1-8 above as if fully set forth herein.

      10.     Abbott is infringing the Falotico '7286 patent in violation of 35 U.S.C. § 271, including by making and/or using the XIENCE V stent in the United States.

      11.     Abbott had and has actual notice of the Falotico '7286 patent, and is infringing the Falotico '7286 patent with knowledge of Cordis Corp.'s patent rights. Abbott's actions are willful and deliberate.

## PRAYER FOR RELIEF

      WHEREFORE, Cordis Corp. prays for the following relief against Abbott:

1.    For judgment in favor of Cordis Corp. that Abbott is infringing Cordis Corp.'s patent;

2.    For a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 prohibiting Abbott from making, using, selling, or offering for sale the infringing products in the United States;

3.    For an award of damages for Abbott's infringement of Cordis Corp.'s patent, together with interest (both pre- and post-judgment), costs, and disbursements as fixed by this Court under 35 U.S.C. § 284;

4.    For a determination that Abbott's infringement is willful, and an award of treble the amount of damages and losses sustained by Cordis Corp. as a result of Abbott's infringement, under 35 U.S.C. § 284;

5.    For a determination that this is an exceptional case within the meaning of 35 U.S.C. § 285, and an award to Cordis Corp. of its reasonable attorneys' fees; and

6.    For such other and further relief in law or in equity to which Cordis Corp. may be justly entitled.

## **DEMAND FOR JURY TRIAL**

Cordis Corp. demands a trial by jury of any and all issues triable of right before a jury.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. # 4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

David T. Pritikin
William H. Baumgartner, Jr.
Paul E. Veith
Russell E. Cass
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000

Dated: September 5, 2007
183864.1